# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Newport News Division

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

v.                                            ACTION NO. 4:12cv64

THE WING SPOT CHICKEN & WAFFLES, INC.,

        Defendants.

## REPORT & RECOMMENDATION

This matter comes before the Court for entry of judgment of default in favor of the plaintiff, Joe Hand Promotions, Inc., and against the defendant, The Wing Spot Chicken & Waffles, Inc. The plaintiff filed this Motion for Default Judgment on October 9, 2012. ECF No. 12. The defendants did not respond within the proper time for a response, making the Motion ripe for decision. This Motion was referred to the undersigned on October 26, 2012. ECF No. 13. Based on the filings in this case, the undersigned RECOMMENDS that the plaintiff's motion be GRANTED and damages be awarded.

## I. PROCEDURAL HISTORY

The plaintiff filed this suit against four defendants on May 2, 2012. ECF. No. 1. Four summonses were issued on May 3, 2012 for defendants Linda Ensley, Walter Ricks, the Wing Spot Chicken & Waffles, Inc., and Omonte Ward. The lawsuit alleged a violation of the Federal Communications Act of 1934, as amended. 47 U.S.C. §§ 553, 605 (2012).

On June 14, 2012 a copy of the summons and complaint was mailed to the Clerk of the State Corporation Commission as service of process on the defendant, the Wing Spot Chicken &

Waffles, Inc. The other defendants in the case were not served, and on September 26, 2012, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, those defendants were terminated from the case. ECF No. 11.

On August 14, 2012, the plaintiff requested an entry of default against the defendant as the defendant's time to answer the complaint had run. ECF No. 7. On August 30, 2012, the Clerk of this Court submitted an Entry of Default as to the defendant. ECF No. 8. This Motion was filed on October 9, 2012, and based on the lack of a response by the defendant, the Motion is ripe.[1]

## II. JURISDICTION AND VENUE

For this Court to render default judgment, the Court must have subject matter and personal jurisdiction over the defendant and the claims. Additionally, venue must be proper. Based on the facts of this case, the Court holds both subject matter jurisdiction over the case and personal jurisdiction over the defendant. Similarly, venue is proper.

**(a) Subject Matter Jurisdiction**

A federal district court has subject matter jurisdiction over claims that arise from federal law. *See* 28 U.S.C. § 1331 (2012). The plaintiff's claims arise from Section 705 of the Communications Act of 1934, as amended in 47 U.S.C. § 553, 605 (2012). *See* Pl.'s Comp. 1. Because the plaintiff's claims arise under a federal statute, this Court holds proper subject matter jurisdiction.

**(b) Personal Jurisdiction**

Personal jurisdiction over a defendant is established when a defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend

---

[1] The plaintiff filed a Motion to Appear Telephonically for the Default Judgment Hearing. ECF No. 14. Counsel was advised by the Court that the Motion as moot has the Court would decide the issue based on the filings. Therefore, the plaintiff's Motion is DENIED as moot.

'traditional notions of fair play and substantial justice,'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1941)), and when the defendant is subject to the personal jurisdiction of the courts of general jurisdiction of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A). Additionally, there must be "effective service of process" to provide this Court with personal jurisdiction. *See Int'l Shoe Co.*, 326 U.S. at 316-17.

There is no doubt that the statutory and constitutional requirements for personal jurisdiction are satisfied because the defendant is a commercial business located in Hampton, Virginia. *See* Pl's. Mot. for Default J. 4. A business within the state clearly has sufficient minimum contacts with the forum state, and that business is subject to the jurisdiction of the courts of Virginia under Code of Virginia § 8.01-328.1.

**(c) Service of Process**

The remaining question is whether there was effective service of process on the defendant. On November 16, 2012, the Court issued a Show Cause Order, requiring the plaintiff to show how its service of process comported with the Federal Rules of Civil Procedure and Virginia statutes. ECF No. 15. The plaintiff responded on December 5, 2012. ECF No. 16. The response satisfied the Court's concerns over service of process.

In this case, service of process was done by mailing a copy of the summons and complaint to the Clerk of the State Corporation Commission (SCC) on June 14, 2012. Pl's Mot. for Default J. 2-3. A Certificate of Compliance from the Clerk was filed with the Court on June 15, 2012, certifying that the defendant had been served. ECF No. 4.

There are two justifications for this type of service of process in the Federal Rules of Civil Procedure. The Rules offer that service of process can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the

district court is located or service is made" and "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1) & (h)(1).

By servicing process on the Clerk of the SCC, the plaintiff followed a method allowed by Virginia statute. Section 8.01-299 of the Code of Virginia allows for service on a Virginia corporation by "personal service of any officer, director, or registered agent." Service of process can be effective by serving the Clerk of the SCC when either "a corporation fails to appoint or maintain a registered agent in this Commonwealth, or whenever its registered agent cannot with reasonable diligence be found at the registered office." Va. Code § 13.1-637(B) (2012).

The plaintiff, through process servers, attempted to serve the defendant through its registered agent, Walter Ricks. Pl.'s Resp. to Show Cause Order, Ex. A (ECF No. 16-1) (SCC registration listing Walter Ricks as registered agent). Code of Virginia § 13.1-637(B) requires that a plaintiff attempt to serve the registered agent at the corporation's registered office. The requisite SCC filing lists two addresses for the defendant and its agent, Mr. Ricks, one in Chesapeake and one in Hampton. *Id.*

The plaintiff's process servers first attempted service at the address in Chesapeake, but were informed that Mr. Ricks did not live at the address.[2] Pl.'s Resp. to Show Cause Order, Ex. B (ECF No. 16-2). The plaintiff's process servers then attempted service at the physical location of the defendant restaurant on nine occasions, but Mr. Ricks was not there at any of those times. *See* Pl.'s Resp. to Show Cause Order, Ex. B-C (ECF Nos. 16-2 & 16-3). The process servers were informed he did not come to the restaurant regularly. *Id.* The process servers left Notices of Attempted Delivery at the defendant restaurant. *Id.* They were advised by restaurant staff to go through Mr. Ricks' attorney, but were not told who Mr. Ricks' attorney was or how to contact

---

[2] It appears that the address was the home of Mr. Ricks' father, but that Mr. Ricks did not live there. *Id.*

4

that person. *Id.* Finally, the process servers requested that employees of the restaurant call Mr. Ricks, and the process servers also left contact information at the restaurant. *Id.*

On the facts presented, the plaintiff correctly served the defendant through the Clerk of the SCC, because the defendant's "registered agent [could not] with reasonable diligence be found at the registered office." Va. Code § 13.1-637(B) (2012). In this case, reasonable diligence can be seen through the process servers' numerous attempts to serve Mr. Ricks. The process servers not only attempted to serve Mr. Ricks at the Chesapeake address, but also attempted to serve Mr. Ricks at least nine times at the defendant restaurant's physical location in Hampton. *See* Pl.'s Resp. to Show Cause Order 2 (ECF No. 16-1). The plaintiff used more than reasonable diligence based on the number attempts the process servers made at different locations, and the fact that the process servers left contact information and Notices of Attempted Delivery. Based on this showing of reasonable diligence, service to the Clerk of the State Corporation Commission was proper under the applicable Virginia statutes, and therefore is allowed under Rule 4(h)(1)(A) and 4(e)(1) of the Federal Rules for Civil Procedure.

Similarly, under the Federal Rules, service of process can be effectuated "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). Based on the same analysis above, the Clerk of the State Corporation Commission is an "agent authorized . . . by law to receive service of process." Therefore, this service of process conforms with Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure.

**(d) Venue**

Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because the defendant restaurant resides in Hampton, Virginia, which is within the Eastern District of Virginia, and substantially

all of the events giving rise to the claim occurred in this district. *See* Pl's. Compl. (ECF No. 1).

### III. FINDINGS OF FACT

1. The plaintiff entered into an agreement with the promoter of an exhibition titled "UFC 128: Shogun v. Jones" (hereinafter the "Exhibition") that the plaintiff would hold the exclusive right to license the Exhibition to commercial establishments. Pl.'s Mem. in Supp. of App. for Default J., Ex. B (ECF No. 12-3).

2. For a commercial establishment to show the Exhibition, the establishment had to enter into an agreement with the plaintiff. On the other hand, a residential viewer could view the Exhibition on pay-per-view cable.

3. If a commercial establishment paid the sublicense fee to the plaintiff, then the establishment would receive the proper equipment and codes to receive the Exhibition via satellite.

4. The Exhibition occurred on March 19, 2011.

5. The defendant is a commercial establishment such that the plaintiff's exclusive right to license the exhibition would apply to the defendant's presentation of the Exhibition.

6. The defendant aired the Exhibition to its patrons.

7. The defendant did not sign a sublicense agreement with the plaintiff and it did not pay the sublicense fee.

8. The defendant restaurant has a capacity of approximately 75 people and approximately 40 people were present watching the Exhibition, on March 19, 2011. *See* Aff. of Linda Dickerson (ECF No. 12-5).

9. The fee for a commercial establishment ranged from $900-$3500 if there would be less

than 500 people at the establishment and could be higher if more than 500 people watched the Exhibition at the establishment. Based on the defendant's capacity of 75 people, the appropriate sublicense fee would have been $1100. *See* Pl.'s Mem. in Supp. of App. for Default J., Ex. C (ECF No. 12-4).

10. The defendant showed the Exhibition on all six of its televisions. *See* Aff. of Linda Dickerson (ECF No. 12-5).

## IV. DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure requires an entry of default against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." The Clerk properly entered a default against the defendant in this case as the defendant failed to respond to the complaint within the twenty-one days allowed by Rule 12 of the Federal Rules of Civil Procedure. ECF No. 8.

Upon default, the facts alleged in the complaint are deemed admitted. *See e.g., Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F.Supp. 2d 533, 535 (E.D. Va. 2012); *Globalsantafe Corp. v. Globalsantafe.Com*, 250 F.Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Conclusions of law are not deemed admitted, and therefore, the Court must "determine whether the well-pleaded allegations in [the] complaint support the relief sought in this action." *Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

The Federal Rules require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Recent Supreme Court decisions, however, mandate that a well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Simple "legal

conclusion[s] . . . [are] not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555).

The plaintiff's complaint alleges a number of the facts included in its present motion. The complaint alleges that the plaintiff was granted the right to distribute the Exhibition via closed circuit television and via encrypted satellite signal. Pl.'s Comp. ¶ 7. The complaint further alleges that although the plaintiff entered into agreements to show the Exhibition with a number of establishments in Virginia, the defendant was not one of these establishments. Pl.'s Comp. ¶ 8 - 10. The plaintiff expended a substantial sum of money to transmit the broadcast to those commercial establishments it contracted with in Virginia. Pl's. Comp. ¶ 9. The complaint further contends that although the defendant restaurant did not have a contract with the plaintiff for the broadcast of the Exhibition, the restaurant presented the Exhibition to its patrons. Pl's. Comp. ¶ 10-15. Finally, the plaintiff claims that to broadcast the Exhibition, the defendant had to have intercepted the plaintiff's transmission signal. Pl's. Comp. ¶ 10.

Based on these facts, the plaintiff alleges claims based on the defendant violating 47 U.S.C.§ 605 (Count I), the defendant violating 47 U.S.C. § 553 (Count II), and the defendant's conversion of the plaintiff's product (Count III).

Section 605 provides in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his

8

own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Although § 605(a) refers to radio communication, Congress brought satellite communications and cable television services within the purview of the section when it added subsections (b)-(e). *See* 47 U.S.C. § 605(b)-(e); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911–912 (6th Cir. 2001) (discussing legislative history of § 605).

Section 553 provides in relevant part:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). Both § 553 and § 605 permit an aggrieved party to bring suit against the violator in federal court. 47 U.S.C. § 553(c)(1), 605(e)(3)(A).

Based on the factual allegations in the complaint, the plaintiff states a well-pleaded complaint. The plaintiff alleges that the defendant restaurant broadcast the Exhibition to its patrons on all of its televisions and did so without a proper license. To obtain the broadcast signal for the Exhibition, the defendant had to intercept a cable and/or satellite communication. The act of intercepting cable and/or satellite communications and broadcasting that signal to its patron without a license is a violation of both § 553 and § 605. Based on the factual allegations made, the plaintiff has made a well-pleaded complaint and the Court RECOMMENDS default judgment be entered.

## V. RELIEF TO BE GRANTED

Default Judgment does not automatically grant the relief sought in the Complaint, but the relief granted cannot exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c). In the complaint, the plaintiff seeks up to $110,000.00 for Count I (the violation of § 605), or alternatively, $60,000.00 for Count II (the violation of § 553).

Sections 553 and 605 both permit statutory damages up to $10,000.00 and recovery of costs and expenses, including reasonable attorney's fees. 47 U.S.C. §§ 553(c), 605(e). However, § 553 allows for additional damages up to $50,000.00 for willful violations of the section, whereas § 605 allows up to $100,000.00 for the same conduct. 47 U.S.C. §§ 553(c)(3)(B), 605(e)(3)(C)(ii). The plaintiff, however, may only recover under one section. *See e.g., Kingvision Pay–Per–View, Ltd. v. Gutierrez*, 544 F.Supp. 2d 1179, 1184 (D. Co. 2008); *J & J Sports Productions, Inc. v. Buruca Brother's Va., Inc.*, Civil Action No. 1:10cv1371, 2011 WL 5873078, at *5 (E.D. Va. Aug. 26, 2011). In its Motion for Default Judgment, the plaintiff elected to recover damages pursuant to § 605, which allows a greater maximum award. Pl.'s Mem. in Supp. of App. for Default J. 5 (ECF No. 12-1).

**(a) Statutory Damages**

Section 605 allows the plaintiff to recover either actual damages suffered or statutory damages for each violation "in a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. 605(e)(3)(C)(i)(I)-(II). Plaintiff seeks an award of $10,000 in statutory damages, rather than an award based on actual damages.

The plaintiff argues that "it would be impossible to determine the full extent of profits lost by Plaintiff, loss of goodwill and the additional damages sustained by Plaintiff as a result of Defendant's unlawful actions." Pl.'s Mem. in Supp. of App. for Default J. 6 (ECF No. 12-1). The plaintiff relies on the difficulty to fully access damages from the illegal broadcast of the Exhibition for why the Court should, in its discretion, award statutory damages. *Id.*

The Court agrees with the plaintiff that it would be difficult to completely access the damages suffered as the result of the defendant's unlawful broadcast of the Exhibition. The only concrete damages that are known in this case is the sublicense fee, which the defendant failed to

10

pay to the plaintiff for the right to broadcast the event. The defendant restaurant would have had to pay $1100 for the sublicense fee to broadcast the Exhibition based on the capacity for seventy-five patrons at the restaurant. *See* Pl's. Ex. A & C (ECF Nos. 12-2 &12-4).

That amount, however, does not take into account the difficulty of detecting these types of violations. In this case, the plaintiff had to expend resources to send an auditor to this restaurant to see if the restaurant would unlawfully broadcast the Exhibition. This type of piracy is no doubt widespread and it is costly to enforce.

Further, the defendant restaurant presumably received some profit from showing the Exhibition to its patrons. On the night of the Exhibition, the defendant restaurant showed the Exhibition on all six of its large screen televisions. *See* Aff. of Linda Dickerson (ECF No. 12-5). The plaintiff's auditor counted between thirty-seven and forty-one patrons in the defendant restaurant at various times during the Exhibition. *Id.* It is reasonable to believe that one reason that the defendant restaurant broadcast the Exhibition was to increase sales and profits.

Most importantly, awarding actual damages does not take into account the deterrence needed in cases like this one. The plaintiff in this case has had to "at considerable expense" retain "auditors and law enforcement personnel to detect and identify signal pirates." Aff. of Joe Hand ¶ 6 (ECF No. 12-2). A commercial establishment will be less likely to pay the sublicense fee, and instead illegally intercept the signal, if the penalty for intercepting the fee is not substantial.

Courts in this district have employed two methods to determine damages under this section. One option is to use a flat amount, determined by the Court based on the sublicense fee that was not paid, and another is to use a per patron rate. *Compare Joe Hand Promotions, Inc. v. Citibars, Inc.*, Civil Action No. 2:11cv58, 2012 WL 503212, at *5 (E.D. Va. Feb. 8, 2012) *and*

11

*Joe Hand Promotions, Inc. v. Veltsista, LLC*, Civil Action No. 1:10cv1442, 2011 WL 5826059, at *2 (E.D. Va. Oct. 21, 2011) (both utilizing the per patron method) *with J & J Sports Prods., Inc. v. Lara Sport House Corp.*, Civil Action No. 1:10cv1369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (awarding a flat fee based on the unpaid sublicense fee).

In light of the facts of this case, merely awarding what the plaintiff would have received as the sublicense fee is insufficient to deter future conduct, to fully compensate the plaintiff for its losses, and to disgorge the defendant of its unlawful gain. Like other courts that have employed the per patron method, the Court agrees that a one-hundred dollars per patron is an appropriate penalty. *See e.g., Citibars*, 2012 WL 503212, at *5; *Veltsista, LLC*, 2011 WL 5826059, at *2. Therefore, the Court RECOMMENDS that the plaintiff be awarded $4000 based on their being approximately forty people at the defendant restaurant on the night of the Exhibition.

**(b) Willful Damages**

Section 605 allows the Court to award up to $100,000 in additional damages when a defendant violates the section "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The plaintiff seeks additional damages in the sum of $50,000 against the defendant in this case. *See* Pl.'s Mem. in Supp. of App. for Default J. 11 (ECF No. 12-1). The plaintiff argues that this amount "will fairly achieve the statutory goals of restitution and deterrence." *Id.*

The Court finds that this is an appropriate case for some additional damages based on the defendant's willful acts to intercept the broadcast. The plaintiff asserts that the transmission signal "cannot be mistakenly, innocently, or accidentally intercepted." Aff. of Joe Hand ¶ 9 (ECF No. 12-2). As one court opined, "Signals do not descramble spontaneously, nor do television sets

connect themselves to cable distribution systems." *Time Warner Cable v. Googies Luncheonette*, 77 F.Supp. 2d 486, 490 (S.D.N.Y 1999). The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition.

Further, the Court finds that this willful act was done for either "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The defendant restaurant is a commercial establishment, and on the night of the Exhibition hosted approximately forty patrons, who were able to enjoy the Exhibition at no cost to the defendant restaurant. Each of the restaurant's six televisions showed the Exhibition. Aff. of Linda Dickerson at 1 (ECF No. 12-5). Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.

Additional damages awarded under § 605 have varied tremendously in this district. *See, e.g.*, *J & J Sports Prods., Inc. v. Bougie, Inc.*, Civil Action No. 1:10cv01374, 2011 WL 6202909, at *7 (E.D. Va. Nov. 25, 2011) ($35,000.00); *J & J Sports Prods., Inc. v. Ricos Tacos Moya Restaurant, Inc.*, Civil Action No. 1:10cv1368, 2011 WL 6100286, at *6 (E.D. Va. Nov. 21, 2011) ($20,000.00); *Integrated Sports Media, Inc. v. Buruca Brother's Virginia, Inc.*, 2011 WL 5873078, at *7 (E.D. Va. Nov. 1, 2011) ($2,000.00); *Veltsistas*, 2011 WL 5826059, at *3 ($5,000.00); *J & J Sports Prods., Inc. v. Great Latin Restaurants, L.C.*, Civil Action No. 1:11cv459, 2011 WL 5873071, at *6 (E.D. Va. Sept. 15, 2011) ($100,000.00). Other courts when determining these additional damages have considered factors "such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of

the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay–Per–View v. Rodriguez,* 2003 U.S. Dist. LEXIS 2674, at *2 (S.D.N.Y. Feb. 24, 2003); *see also Joe Hand Promotions, Inc., v. Bougie, Inc.*, 2010 WL 1790973, at *6 (E.D. Va. April 12, 2010).

Based on the factors used by other courts, the Court finds that a milder fine is appropriate. The plaintiff does not allege that the defendant is a repeat violator, and the Court has no reason to believe otherwise. Similarly, the plaintiff does not allege substantial financial gain by the defendant. The defendant showed the Exhibition at 10:30 p.m. on March 19, 2011, and approximately forty patrons were able to enjoy the Exhibition. *See* Aff. of Linda Dickerson (ECF No. 12-5). This no doubt led to some unlawful monetary gain by the defendant, but likely not enough that the financial gain that evening would be considered "substantial." Similarly, the actual damages that can be calculated in this case is $1100, the amount of the unpaid sublicense fee. The Court, however, acknowledges that there are additional actual damages to the plaintiff in lost revenue, devaluing the plaintiff's product, and the like. Finally, there is no allegation that the defendant advertised the Exhibition or charged a cover charge or premium for food or drinks that evening.

The Court recognizes the need to deter signal pirates in cases like this case. The Court also agrees with a number of other courts that "although the amount of damages should be an adequate deterrent, [a single] violation is not so serious as to warrant putting the restaurant out of business." *Garden City Boxing Club, Inc. v. Polanco*, No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb 7, 2006); *see also Citibars, Inc*., 2012 WL 503212, at *6. Based on the lack of allegations of egregious behavior on the part of the defendant, the Court finds that $27,000 is an appropriate award in additional damages for the defendant's willful action.

### (c) Attorneys' Fees

The plaintiff seeks $1500 in attorneys' fees and $500 in costs. Under § 605, the prevailing party can recover full costs and reasonable attorneys' fees. 47 U.S.C. § 605(e) The plaintiff estimates that attorneys' fees for this case are approximately $1500 based on six hours of work at an hourly rate of $250. Pl.'s Mem. in Supp. of App. for Default J., Ex. 6, ¶ 7-9 (ECF No. 12-6). For costs, the plaintiff includes the $350 filing fee and $150 for the expected cost for service of process. *Id.*

The Court FINDS that the requests for attorneys' fees and costs are modest and RECOMMENDS that the plaintiff be awarded $1,500 in attorneys' fees and $500 in costs.

## VI. SUPPLEMENTAL CLAIM IN COMPLAINT

In its complaint, the plaintiff made a state law claim based on conversion. Pl.'s Compl. ¶ 28-30 (ECF No. 1). In its application for default judgment, however, the plaintiff did not seek judgment on Count III, instead the application only mentions the federal law claims.

Because the plaintiff did not seek judgment on Count III of its complaint, the Court did not engage in the supplemental jurisdiction analysis to determine if the claim was properly in federal court. Additionally, the Court did not consider any damages attached to Count III. Based on the plaintiff' failure to seek judgment on Count III, the Court RECOMMENDS Count III be dismissed.

## VII. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing

of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
———————————————
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
January 9, 2013

**CLERK'S MAILING CERTIFICATE**

      A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

The Wing Spot Chicken & Waffles, Inc.
2274 Executive Drive
Hampton, Virginia 23666

The Wing Spot Chicken & Waffles, Inc.
4652 Helensburgh Dr.
Chesapeake, Virginia 23321

Malik K. Cutlar, Esq.
PCT Law Group, PLLC
330 John Carlyle Street, Third Floor
Alexandria, Virginia 22314
(703) 881-9141
Email: mcutlar@pctlg.com

                                Fernando Galindo, Clerk

                          By _____
                                Deputy Clerk
                               January __, 2013